# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP1518 |

| | |
|---|---|
| COMPLETE TITLE: | Ted Ritter and Carolyn Ritter d/b/a Ritter Enterprises, Inc., <br>       Plaintiffs-Respondents, <br>   v. <br> Tony Farrow and Arlyce Farrow d/b/a Farrow Enterprises, Inc., <br>       Defendants-Appellants-Petitioners, <br> Bibs Resort Condominium, Inc., <br>       Intervenor-Respondent. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 388 Wis. 2d 421,933 N.W.2d 167
PDC No:2019 WI App 46 - Published

| | |
|---|---|
| OPINION FILED: | February 23, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 8, 2020 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Vilas |
|   JUDGE: | Michael H. Bloom |

JUSTICES:

KAROFSKY, J., delivered the majority opinion for the Court, in which REBECCA GRASSL BRADLEY, DALLET, and HAGEDORN, JJ., joined. ROGGENSACK, C.J., filed a dissenting opinion in which ANN WALSH BRADLEY and ZIEGLER, JJ., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the defendants-appellants-petitioners, there were briefs filed by *Jennifer L. Gregor, Allison W. Reimann,* and *Godfrey & Kahn, S.C.*, Madison. There was an oral argument by *Jennifer L. Gregor.*

For the intervenor-respondent, there was a brief filed by *John E. Danner* and *Harrold, Scrobell & Danner, S.C., Minocqua*. There was an oral argument by *John E. Danner*.

**2021 WI 14**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2018AP1518
(L.C. No.  2010CV212)

STATE OF WISCONSIN        :      IN SUPREME COURT

**Ted Ritter and Carolyn Ritter d/b/a Ritter Enterprises, Inc.,**

       **Plaintiffs-Respondents,**

  v.

**Tony Farrow and Arlyce Farrow d/b/a Farrow Enterprises, Inc.,**

       **Defendants-Appellants-Petitioners,**

**Bibs Resort Condominium, Inc.,**

       **Intervenor-Respondent.**

**FILED**

**FEB 23, 2021**

Sheila T. Reiff
Clerk of Supreme Court

---

KAROFSKY, J., delivered the majority opinion of the Court, in which REBECCA GRASSL BRADLEY, DALLET, and HAGEDORN, JJ., joined. ROGGENSACK, C.J., filed a dissenting opinion in which ANN WALSH BRADLEY and ZIEGLER, JJ., joined.

---

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded.*

¶1    JILL J. KAROFSKY, J.   The subjects of this case are a logo depicting a pair of red bib overalls with a handkerchief hanging out of the back pocket and the names "Bibs Resort" and "Bibs."  These designations relate to a lakefront resort in St.

Germain, Wisconsin, and we are asked to determine their ownership.[1]

¶2 The three parties involved in this case are: (1) Ted and Carolyn Ritter, original owners of Bibs Resort; (2) Tony and Arlyce Farrow, purchasers of the Ritters' resort management business; and (3) Bibs Resort Condominium, Inc., the condominium association at Bibs Resort ("Association"). The Farrows claim that they assumed ownership of the Bibs Resort marks when they purchased the Ritters' resort management business, and that the Ritters subsequently infringed on those marks. The Ritters and the Association disagree with the Farrows.

¶3 The circuit court granted summary judgment to the Ritters and the Association and denied the Farrows' motion.[2] The circuit court concluded that the Bibs Resort marks "became part of" the Association in 1998 when the resort was converted to a condominium form of ownership. Finding that no one exclusively owned the Bibs Resort marks after that conversion, the circuit court ruled that the Farrows could not have become exclusive owners of the marks when they purchased the Ritters' resort

_____

[1] The court of appeals correctly noted that there are three designations at issue, but "the Farrows do not argue that any legal principle applies to only one particular designation, nor do they argue that any material facts exist that differentiate between the designations." Ritter v. Farrow, 2019 WI App 46, ¶4 n.2, 388 Wis. 2d 421, 933 N.W.2d 167. We agree and will collectively refer to the designations at issue as the "Bibs Resort marks" unless otherwise noted.

[2] The Honorable Michael H. Bloom of the Vilas County Circuit Court presided.

2

management business in 2006. The court of appeals affirmed on other grounds, ruling that the 1998 resort-to-condominium conversion resulted in the Ritters impliedly transferring the Bibs Resort marks to the Association. The court of appeals reasoned that because of that transfer, the Ritters no longer owned the marks and, as a result, could not have sold them to the Farrows in 2006.

¶4 It is a well-settled legal principle that trademarks and their associated goodwill pass with the sale of a business. Therefore, we conclude as a matter of law that: (1) the Association did not acquire the Bibs Resort marks in 1998; and (2) the Farrows became the exclusive owners of the Bibs Resort marks in 2006 when they purchased the resort management business from the Ritters. Consequently, since the circuit court did not apply the well-settled principles surrounding trademarks and trade names, we reverse the grant of summary judgment to the Ritters and the Association and remand to the circuit court to reconsider the Farrows' summary judgment motion in light of our legal conclusions.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶5 In the spring of 1986, the Ritters[3] purchased a lakefront resort in St. Germain, Wisconsin and named it "Bibs Resort." The property included a permanent residence, 11 rental units, and an on-site bar. Ted and Carolyn Ritter lived in the

---

[3] All references to "the Ritters" are to Ted and Carolyn Ritter doing business as Bibs Resort, Inc. or its subsequent name, Ritter Enterprises, Inc., unless otherwise noted.

permanent residence while renting the other units to the public and operating the bar. To represent the resort, the Ritters created a logo depicting a pair of red bib overalls with a handkerchief hanging out of the back pocket. The name "Bibs Resort" was incorporated into the logo.

¶6 Under the Bibs Resort marks, the Ritters provided resort management services to guests and patrons of the resort. These services included marketing rental units to the public, collecting payments, tracking expenses, maintaining the grounds, cleaning the units, operating the on-site bar, and organizing activities such as picnics, waterskiing lessons, volleyball tournaments, campfires, and fishing lessons for guests.

¶7 In 1998, the Ritters converted the resort to a condominium form of ownership. Pursuant to Wis. Stat. ch. 703 (2017-18),[4] the "Condominium Ownership Act," the Ritters recorded a condominium declaration[5] and plat with the Vilas County Register of Deeds. The "Declaration of Condominium" ("Declaration") specifically excluded any transfer of the resort management services the Ritters had provided since 1986, stating that "nothing in the paragraphs in these Declarations shall be construed to prohibit [the Ritters] from continuing to operate the property, or any part thereof, as a resort, or to prohibit

---

[4] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

[5] A condominium declaration contains, among other things, a condominium's name and address and a description of the land, units, and common elements. See Wis. Stat. § 703.09(1)(a)-(j).

4

any of the units [sic] owners from renting out the unit or units." Said differently, the Ritters would continue to provide resort management services after the condominium conversion in the same manner as they had before the conversion.

¶8 The Declaration identified the newly established condominium's legal name as "Bibs Resort Condominium." The Declaration referenced the transfer of the "real property" of Bibs Resort and described the condominium as consisting of 13 units (12 dwellings and the on-site bar) and 15 garage units. It also established that each unit owner had exclusive rights to use certain limited common elements and owned a fractional interest in the condominium's common elements. Included within the Declaration's description of the common elements was "[a]ll the tangible personal property required for the operation of the condominium." (Emphasis added.) The Declaration did not contain any reference to the conveyance of intangible personal property.[6]

¶9 The Declaration also recognized the Association as the entity responsible for the operation of the condominium, in compliance with the Condominium Ownership Act. See Wis. Stat. § 703.15(1).[7] At the time of the condominium conversion, the

---

[6] Tangible property is "[p]roperty that has physical form and characteristics," whereas intangible property is "[p]roperty that lacks a physical existence." Tangible property, Black's Law Dictionary 1412 (10th ed. 2014); Intangible property, id. at 1411.

[7] The articles of incorporation and the bylaws for the Association were also filed in 1998.

Ritters were the sole members of the Association because they owned all 13 units of the condominium. Additionally, they continued to rent out 11 units and, as noted above, provide resort management services to guests and patrons under the Bibs Resort marks.

¶10 Between May 1998 and September 2005, the Ritters sold four of the condominium units. The Ritters entered into rental management agreements with each of the new unit owners, renting and marketing these units on the new owners' behalf. At the time of the sale of each unit, the Bibs logo, which prominently displayed the associated unit number, was affixed to the exterior wall of the unit.

¶11 In April 2006, the Farrows[8] sought to purchase the entirety of the Ritters' resort management business and presented them with an offer to purchase "the Business known as Bibs" and Unit 13, the on-site bar. The offer to purchase stated that the sellers, the Ritters, "shall include in the purchase price and transfer . . . goodwill . . . and business personal property . . . ." The offer defined "business personal property" as "all tangible and intangible personal property and rights in personal property owned by Seller and used in the business as of the date of [the] Offer, including . . . trade names . . . ."[9] An "Amendment to Offer to Purchase" similarly

---

[8] The Farrows operated under the corporate entity "Farrow Enterprises, Inc."

[9] While the offer was still pending, the Farrows also purchased unit 12, the permanent residence.

described the sale as including "Unit 13 Bibs Resort Condominiums and the business known as Bibs Resort."

¶12 The Ritters accepted the Farrows' offer, and the sale closed on June 23, 2006. The Ritters executed a document that "authorize[d] the sale of BIB's [sic] Resort, Inc. property management, its management contracts, listed inventory, all associated equipment and Unit #13." The Ritters also signed a bill of sale that conveyed to the Farrows the personal property necessary for resort management, including fishing boats, canoes, paddle boats, a golf cart, bedding supplies, and cleaning supplies. That bill of sale also conveyed to the Farrows the business equipment needed to manage the resort, including a computer, business records, business licenses/registration, the website, and office supplies.

¶13 Additionally, the Ritters filed a "Report of Business Transfer" with the Wisconsin Department of Workforce Development, as required by Wisconsin's unemployment insurance law. This report indicated that there was a "total transfer" of the Ritters' business, which the Ritters described as "management of vacation resort." Included within the list of "assets" transferred, the Ritters selected the box titled "Goodwill." This report also identified the former owner/operator's trade name as "Bibs Resort" and the new owner/operator's trade name as "Bibs Resort."

¶14 In September 2006, the parties also sent a joint letter to the Wisconsin Department of Revenue ("DOR"). In that

7

letter, the Ritters and the Farrows explained the change in business names as follows:

> In June of this year, the management of the resort and some of the buildings were sold to Farrow Enterprises, Inc. . . . . Anthony and Arlyce Farrow, corporate officers of Farrow Enterprises, Inc., would like to use the name BIBS Resort as a trade name since they are handling advertising, reservations and payments under that name. Ted and Carolyn Ritter are amenable to that change.
>
> BIBS Resort, Inc. . . . still owns business property (some rental cottages) at the resort. Corporate officers Ted and Carolyn Ritter wish to maintain the business corporate status but change the current name of BIBS Resort, Inc. to Ritter Enterprises, Inc. . . .
>
> Anthony and Arlyce Farrow wish to keep Farrow Enterprises, Inc. as their legal entity and use BIBS Resort as their trade name . . . .

¶15 After the sale, the Farrows stepped into the role of resort managers and provided services to guests and patrons under the Bibs Resort marks. The Farrows signed new rental agreements with each unit owner. They also entered into an agreement with the Association's board of directors, pursuant to which the Farrows assumed responsibility for maintenance, repair, landscaping, and groundwork for the common elements.

¶16 Not long after the sale, the relationship between the Ritters and the Farrows soured. In February 2008, the Ritters terminated their rental management agreements with the Farrows for the seven units that the Ritters still owned. Over the next two years, the four other condominium unit owners followed suit. After the rental agreements were terminated, the Ritters started

renting out their units and the units of the other owners.  The Ritters rented out the units and provided services under the name "The Cottages at Bibs Resort" and "Bibs Cottages" and also used the logo of a pair of red bib overalls.

¶17  Meanwhile, the Farrows were taking steps to officially register the Bibs Resort marks with the State.  In November 2008, unbeknownst to any of the other unit owners, the Farrows filed an "Application for Registration of Marks" with the Office of the Secretary of State of Wisconsin, seeking to register a "pair of red bibs with a kerchief sticking out of pocket" and the resort name of "Bibs."  In February 2010, the Farrows filed another application, seeking to register the mark "Bibs Resort."

¶18  Several months later, the Ritters filed an action against the Farrows which set in motion the decade of litigation that preceded this appeal.  The Farrows counterclaimed with multiple causes of action, including trademark infringement.  The circuit court eventually dismissed all of the Ritters' claims, and the case proceeded to trial on the Farrows' counterclaims.

¶19  A month prior to trial, the Association filed a motion to intervene, which the circuit court denied.  At trial, the jury found in favor of the Farrows on three points:  (1) the Farrows had established use of the name "Bibs Resort" as a trade name; (2) the Ritters' use of the name "Bibs Cottages" and "The Cottages at Bibs Resort" infringed on that trade name; and

(3) the Ritters' infringement was a cause of damages to the Farrows.[10]

¶20 The Association appealed the order denying its motion to intervene and the Ritters appealed the entry of judgment; these actions were consolidated on appeal. The court of appeals reversed the circuit court's order denying the motion to intervene and remanded the case for further proceedings. See Ritter v. Farrow, Nos. 2012AP781 & 2013AP927, unpublished slip op. (Wis. Ct. App. June 24, 2014).

¶21 On remand, the circuit court determined that "[t]he trial of this case on remand from the Court of Appeals shall include the common law and statutory trade name claims at issue in the first trial . . . ." The Farrows and the Association filed competing motions for summary judgment "regarding trade name and trademark infringement." The circuit court granted summary judgment to the Association and the Ritters and denied the Farrows' motion.[11] The circuit court concluded that: (1) "Bibs Resort" was a trade name; (2) the name Bibs Resort "became part of" the Association at the time of the 1998 conversion; (3) although there were disputed issues of fact as

---

[10] The jury ruled on the Farrows' other counterclaims, but the disposition of those counterclaims is not relevant to this dispute.

[11] The Farrows raised federal trademark infringement claims for the first time on summary judgment. The Association objected to the Farrows raising these claims. The circuit court declined to reach the issue, concluding that the federal claims were moot in light of the court granting summary judgment to the Association.

to whether the marks were transferred to the Farrows as part of the 2006 sale, that dispute was immaterial because the Ritters did not have exclusive ownership of the marks in 2006; and (4) because each individual condominium owner held rights to "Bibs Resort," no one held exclusive ownership. The Farrows appealed.

¶22 The court of appeals affirmed the circuit court on different grounds, concluding that, in 1998, the Ritters impliedly transferred the name "Bibs Resort" to the Association when they converted their resort to a condominium form of ownership; consequently, the Ritters could not have transferred ownership of the name "Bibs Resort" to the Farrows in 2006. Ritter v. Farrow, 2019 WI App 46, ¶5, 388 Wis. 2d 421, 933 N.W.2d 167. The Farrows petitioned this court for review, which we granted.[12]

## II. STANDARD OF REVIEW

¶23 "We review a grant of summary judgment independently, applying the same methodology as the circuit court." Pinter v. Vill. of Stetsonville, 2019 WI 74, ¶26, 387 Wis. 2d 475, 929 N.W.2d 547. Summary judgment shall be granted where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2).

---

[12] While the Ritters are still a party to this litigation, they did not file a brief with this court or the court of appeals. Instead, by letter brief, the Ritters asserted that their interests were adequately represented by the Association's brief.

III.  ANALYSIS

¶24  In order to determine whether summary judgment was properly granted, we must ascertain whether the circuit court applied the well-settled principles of trademark and trade name law in determining exclusive ownership of the Bibs Resort marks. We begin with a brief primer on trademarks and trade names and then discuss the Bibs Resort marks at issue.  We then address the parties' arguments regarding how both the 1998 resort-to-condominium conversion and the 2006 sale of the resort management business impacted the ownership of the Bibs Resort marks.

A. Trademarks and Trade Names Generally

¶25  This litigation involves both a trademark and trade names.  Wisconsin law recognizes a common law and statutory cause of action for infringement of trademarks and trade names. See  First Wis. Nat'l Bank of Milwaukee v. Wichman, 85 Wis. 2d 54, 63, 270 N.W.2d 168 (1978); Wis. Stat. ch. 132. Although Wisconsin has long recognized a cause of action for trademark infringement, Wisconsin courts have recognized that the state's jurisprudence on trademark law is "undeveloped." See Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd., 2004 WI App 129, ¶34, 275 Wis. 2d 397, 685 N.W.2d 853.  Therefore, we look to federal law for guidance and key principles, id., as well as to treatises.

¶26  A trademark is "a word, name, symbol, device, or other designation, or a combination of such designations, that is distinctive of a person's goods or services and that is used in

a manner that identifies those goods or services and distinguishes them from the goods or services of others." Restatement (Third) of Unfair Competition § 9 (Am. L. Inst. 1995); see 15 U.S.C. § 1127 (2012) (defining "trademark"); Wis. Stat. § 132.001(2) (defining "mark"); 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 3:1 (5th ed. 2019). "From an economic point of view, a trademark is a symbol that allows a purchaser to identify goods or services that have been satisfactory in the past and reject goods or services that have failed to give satisfaction." 1 McCarthy, supra, § 2:3. In other words, a trademark "helps consumers identify goods and services that they wish to purchase, as well as those they want to avoid." Matal v. Tam, 582 U.S. ___, 137 S. Ct. 1744, 1751 (2017).

¶27 A trademark is a form of intangible property that cannot exist "separate from the good will of the product or service it symbolizes." 1 McCarthy, supra, § 2:15. "Good will is a business value that reflects the basic human propensity to continue doing business with a seller who has offered goods and services that the customer likes and has found adequate to fulfill [his or] her needs." Id., § 2:17; see also Newark Morning Ledger Co. v. United States, 507 U.S. 546, 555-56 (1993) ("Although the definition of goodwill has taken different forms over the years, the shorthand description of good-will as 'the expectancy of continued patronage' . . . provides a useful label with which to identify the total of all the imponderable qualities that attract customers to the business." (quoted

13

source omitted)); Goodwill, Black's Law Dictionary 810 ("A business's reputation, patronage, and other intangible assets that are considered when appraising the business, esp. for purchase. . . . "). Accordingly, a trademark cannot be sold or assigned unless the associated goodwill is also sold. See 1 McCarthy, supra, § 2:15.

¶28 In contrast, a trade name is a "word, name, symbol, device or other designation, or a combination of such designations, that is distinctive of a person's business or other enterprise and that is used in a manner that identifies that business or enterprise and distinguishes it from the businesses or enterprises of others." Restatement (Third) of Unfair Competition § 12; see 1 McCarthy, supra, § 4:5 (defining "trade name"). In short, a trademark identifies and distinguishes goods and services, while a trade name denotes a business or association. See 1 McCarthy, supra, § 4:5. In both cases, the key is whether the designation serves as an indicator of the source; i.e., whether it distinguishes the goods/services/business from others so that consumers can identify the source that is connected to the designation. See Fireman's Fund Ins. Co. of Wis. v. Bradley Corp., 2003 WI 33, ¶28, 261 Wis. 2d 4, 660 N.W.2d 666.

¶29 It is an "old and clear rule, universally followed" that when a business is sold, "trademarks and the good will of the business that the trademarks symbolize are presumed to pass with the sale of the business. . . . " 3 McCarthy, supra, § 18:37. "The rule of law is well recognized that in a

14

voluntary sale of a business as an entirety, trademarks and trade names, which have been lawfully established and identified with such business, will pass to one who purchases as a whole the physical assets or elements of the business." Am. Dirigold Corp. v. Dirigold Metals Corp., 125 F.2d 446, 453 (6th Cir. 1942) (citing Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U.S. 554, 558 (1908)); see Yellowbook Inc. v. Brandeberry, 708 F.3d 837, 846 (6th Cir. 2013)("[W]hen a business sells the 'entirety' of its assets, the trade name is presumably one of those assets.  A contract that sells 'as an entirety the property of a corporation, including good will, passes title to the business trademarks of the corporation.'" (quoted source omitted)).  Having outlined the relevant terms and legal principles, we apply those concepts to the facts of this case.

### B. The Bibs Resort Marks

¶30  We begin by emphasizing that the Bibs Resort marks indicate the source of the provided goods or services.  That is, the Bibs Resort marks represent the resort management services that the Ritters' business continuously provided from Bibs Resort's founding in 1986 until 2006.  These services included marketing, maintenance, cleaning, and conducting social activities.  It is undisputed that the Ritters provided these services uninterrupted and in the same fashion even after the 1998 resort-to-condominium conversion, a conclusion bolstered by the plain language of the Declaration.  The Declaration expressly permitted the Ritters' business to continue providing these resort management services:  "nothing in the paragraphs in

these Declarations shall be construed to prohibit [the Ritters] from continuing to operate the property, or any part thereof, as a resort or to prohibit any of the units [sic] owners from renting out the unit or units."

¶31 During the 20 years that the Ritters provided the resort management services, the Bibs Resort marks were transformed into symbols of the resort management services, including the resort activities and their associated enjoyment. In other words, the Ritters' resort management business built up the goodwill of the resort through activities such as picnics, campfires, and other lakeside recreational events, as well as maintaining the grounds, cleaning the units, and operating an on-site bar, all while using the Bibs Resort marks. See 1 McCarthy, supra, § 3:2 (noting that a trademark "is the visual symbol of the good will and reputation that a business has built up in a product or service"). Because the Ritters provided ongoing and uninterrupted resort services, returning customers were able to identify their services, and the associated goodwill, with the Bibs Resort marks. Having established this link between the Bibs Resort marks and the resort management services they symbolized, we turn to the Association's argument about the 1998 resort-to-condominium conversion.

C. The Association's Claim of Ownership

¶32 The Association contends, and the court of appeals agreed, that the 1998 resort-to-condominium conversion transferred to the Association the Bibs Resort marks. The Association's argument fails for two reasons. First, the

16

argument violates longstanding trademark and trade name principles. Second, neither the Condominium Ownership Act nor the Declaration "mandate[d]" a transfer of the Bibs Resort marks from the Ritters to the Association in 1998.

¶33 The Association asserts that the Bibs Resort marks were tied to the resort's real property and thus automatically transferred when the Ritters recorded the Declaration and converted the property to a condominium. This argument violates the longstanding principle that marks cannot exist separate and apart from the goodwill of the product or service they symbolize: the resort management services. See 1 McCarthy, supra, § 2:15 ("A trademark has no existence separate from the good will of the product or service it symbolizes. Good will and its tangible symbol, a trademark, are inseparable."); Marshak v. Green, 746 F.2d 927, 929 (2d Cir. 1984) (reasoning that "[t]here are no rights in a trademark apart from the business with which the mark has been associated; they are inseparable"). Whether the lakefront property in and of itself drew and attracted guests is irrelevant to the analysis here because the Bibs Resort marks protect, and are associated with, the goods and services that the Ritters provided through their

business.[13] By incorrectly linking the Bibs Resort marks to the real property rather than the resort management services, the Association misidentifies the source of the goodwill underlying the Bibs Resort marks.

¶34 The Condominium Ownership Act lends no support to the Association's argument that there was an automatic transfer of the Bibs Resort marks to the Association in 1998. The court of appeals concluded that the transfer "is mandated" by Wis. Stat. § 703.15, which says that "[t]he affairs of every condominium shall be governed by an association" of unit owners. Ritter, 388 Wis. 2d 421, ¶25. But, even putting aside (1) the fact that the Ritters continued to provide the resort management services that the marks symbolized; and (2) that those marks cannot exist separate and apart from the goodwill of the product or service they symbolize, the plain language of chapter 703 did not "mandate" the transfer of the Bibs Resort marks in 1998. Section 703.15(3) lists the powers of condominium associations,

_____

[13] The court of appeals relied upon ABKA for the proposition that "in the context of resort properties, the 'product' that attracts prospective renters is not the type of fungible services identified by the Farrows." See Ritter, 388 Wis. 2d 421, ¶35 (citing ABKA Ltd. P'ship v. Bd. of Rev. of Vill. of Fontana-On-Geneva Lake, 231 Wis. 2d 328, 342, 603 N.W.2d 217 (1999)). However, ABKA is inapposite because it is a property tax decision in which this court held that management income that is "inextricably intertwined with" the resort property may be included in a tax assessment, even if the services are provided offsite. ABKA, 231 Wis. 2d at 331. ABKA has no bearing on this case and the bedrock principles of trademark and trade name law that dictate that marks indicate the source of goods or services.

including the conditional power of an association to "[a]cquire, hold, encumber and convey any right, title or interest in or to real property." (Emphasis added.) The Bibs Resort marks are intangible property, the ownership of which is not enumerated among the powers granted by the Condominium Ownership Act. It is a well-established principle of statutory interpretation that "the express mention of one matter excludes other similar matters [that are] not mentioned." FAS, LLC v. Town of Bass Lake, 2007 WI 73, ¶27, 301 Wis. 2d 321, 733 N.W.2d 287 (quoting Perra v. Menomonee Mut. Ins. Co., 2000 WI App 215, ¶12, 239 Wis. 2d 26, 619 N.W.2d 123). The legislature, in drafting the Condominium Ownership Act, was fully capable of granting condominium associations the power to own intangible property such as trademarks and trade names. It did not do so.

¶35 To be sure, Wis. Stat. § 703.15(3)(a)4. grants to associations broad authority to "[e]xercise any other power conferred by the condominium instruments[14] or bylaws." (Emphasis added.) Despite this open-ended grant to a condominium association to construct its bylaws as it sees fit, the statute explicitly states that any non-enumerated powers held by an association must be expressly conferred in either the condominium instruments or bylaws. Here, even assuming, incorrectly, that the Bibs Resort marks can be separated from the resort management services they represent, there is no

---

[14] Pursuant to Wis. Stat. § 703.02(5), condominium instruments include "the declaration, plats and plans of a condominium together with any attached exhibits or schedules."

19

evidence that the Bibs Resort condominium's bylaws conferred on the Association the ability to own any items of intangible property and it is undisputed that the Association never provided goods or services in the resort management service industry.[15]

¶36 Additionally, the Declaration does not contain any references to the transfer of intangible property to the Association.  Nor does it evince any transfer of the Bibs Resort marks or any part of the business and associated goodwill that those marks represent.  To the contrary, the Declaration specifically and unambiguously excludes that business from the Association's authority, reserving it for the Ritters.  And the Ritters continued to provide those resort management services to guests and patrons under the Bibs Resorts marks for years following the resort-to-condominium conversion.

¶37  In sum, both the Association's argument that there was a transfer of the Bibs Resort marks to the Association in 1998 and the circuit court's conclusion that the Bibs Resort marks "became part of" the Association violate basic principles of trademark and trade name law.  Additionally, there is no reading

---

[15] The Farrows have consistently reiterated that they do not dispute the Association's use of the marks in a non-business context, such as affixing the logo to the exterior wall of each unit, since these uses are not uses in the marketplace and do not indicate a source of goods or services.

20

of the Condominium Association Act or the condominium instruments that supports such a "mandated" transfer.[16]

### D. The Farrows' Claim of Ownership

¶38 Having determined that there is no support for the proposition that the Bibs Resort marks transferred to the Association in 1998, we turn next to the 2006 sale.  In 2006, the Ritters sold the on-site bar and "the Business known as Bibs" to the Farrows.  Included in the offer to purchase were the "goodwill" and "business personal property," defined as "all tangible and <u>intangible</u> personal property and rights in personal property owned by Seller and used in the business as of the date of [the] Offer, including . . . trade names. . . . "  (Emphasis added.)  The Ritters also signed a bill of sale that transferred the personal property and business equipment necessary to operate the resort management business to the Farrows.  The parties confirmed the sale of the entirety of the Ritters' resort management business to the Farrows in subsequent

---

[16] We also note that the court of appeals relied in part upon Carolyn Ritter's affidavit, in which she averred that she and her husband did not sell the trademark rights at issue to the Farrows in 2006 because the "name and logo [of Bibs Resort] was and is the property of the [Association.]"  Likewise, the dissent exclusively relies upon Carolyn Ritter's unsupported averment that "Each unit [the Ritters] sold included the right to use the name as well as the logo."  <u>See, e.g.</u>, Dissent, ¶¶61, 72, 73.  We decline to rely upon this self-serving affidavit since the averments violate longstanding trademark and trade name law and her averments find no independent support in the Declaration or the Condominium Ownership Act.  <u>See</u> <u>TMT N. Am., Inc. v. Magic Touch GmbH</u>, 124 F.3d 876, 884 (7th Cir. 1997) (recognizing the danger of allowing parties to "us[e] self-serving testimony to gain ownership of trademarks").

documentary filings with the State. Indicative of selling their business to the Farrows, Ted and Carolyn Ritter changed their business name from "Bibs Resort, Inc." to "Ritter Enterprises, Inc."

¶39 Following the "old and clear rule, universally followed," the Bibs Resort marks and their associated goodwill passed from the Ritters to the Farrows in 2006 with the sale of the resort management business. See 3 McCarthy, supra, § 18:37 ("When a business is sold . . . trademarks and the good will of the business that the trademarks symbolize are presumed to pass with the sale of the business."); Am. Dirigold Corp., 125 F.2d at 453 ("The rule of law is well recognized that in a voluntary sale of a business as an entirety, trademarks and trade names, which have been lawfully established and identified with such business, will pass to one who purchases as a whole the physical assets or elements of the business . . . .").

¶40 To summarize, the language in the 2006 documents clearly shows that the Ritters sold the Farrows the entirety of their resort management business, which included the associated goodwill and exclusive ownership of and rights to the Bibs Resort marks. The offer to purchase made explicit the Farrows' intention to purchase the goodwill that was inextricably associated with the resort management services. The bill of sale signed by the Ritters further indicates that the resort management business and related goodwill were transferred together in accordance with longstanding practice. The Report of Business Transfer filed by the Ritters and the joint letter

the parties sent to the DOR subsequent to the sale provide even more evidence demonstrating the parties' intent to transfer the goodwill and trade names from the Ritters to the Farrows. Based on the ample evidence in the record and well-settled trademark and trade name law, the ownership of the Bibs Resort marks passed with the sale of the Ritters' resort management business in 2006.[17]

¶41 Having determined that the Ritters and the Association were not entitled to summary judgment because: (1) applying well-settled principles of trademark and trade name law, the Bibs Resort marks did not transfer to the Association in 1998; and (2) the Farrows owned the Bibs Resort marks as of 2006 when they purchased the Ritters' business, we reverse the circuit court's grant of summary judgment. This case must be remanded

---

[17] The Association also asserts that the Bibs Resort marks are a collective mark of the Association. We need not address this argument based on the foregoing analysis and our conclusion that the Farrows were the exclusive owners of the Bibs Resort marks as of 2006.

to the circuit court to reconsider the Farrows' summary judgment motion in light of our legal conclusions.[18]

## IV.   CONCLUSION

¶42  Because it is a well-settled principle that trademarks and their associated goodwill pass with the sale of a business, we conclude as a matter of law that the Farrows became the exclusive owner of the Bibs Resort marks in 2006 when they purchased the resort management business from the Ritters.  We reverse the grant of summary judgment to the Ritters and the Association and remand the case to the circuit court to reconsider the Farrows' summary judgment motion in light of our legal conclusions.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded.

---

[18] The dissent claims that this opinion "gets all tangled up in asserted connections between goodwill and tradenames, which issues are not relevant to the dispute before us."  Dissent, ¶91.  Yet, the connection between goodwill and the Bibs Resort marks is the crux of this case, as it is determinative of the trademark ownership issues before us.  The dissent erroneously conflates trademark use with trademark ownership.  Instead of grappling with either of the ownership issues the parties presented to this court, the dissent concludes that the Ritters did not have "exclusive use" of the marks when they sold the resort management business in 2006 because they had "dispersed the right to use Bibs Resort and its logo to others long before their 2006 transaction with the Farrows."  Id., ¶87.  But in reaching this determination, the dissent glosses over the key fact that although the Association and the individual unit owners used the name and logo for non-commercial purposes, nowhere does the record demonstrate that they used the marks to provide resort management services.

24

¶43 PATIENCE DRAKE ROGGENSACK, C.J. *(dissenting).* The majority opinion errs when it fails to apply summary judgment methodology, which is the same for us as it is for the circuit court, and thereby ignores uncontested material facts developed during summary judgment. Those uncontested facts preclude Anthony and Arlyce Farrows' (the Farrows) claim for tradename or trademark infringement. The majority opinion compounds its error when it ignores the common law of Wisconsin in regard to what must be shown at summary judgment to make or defeat a prima facie claim of infringement of tradename or trademark and relies instead on federal case law that is grounded in the Lanham Act.

¶44 I conclude that application of Wisconsin common law to the questions presented requires affirming the court of appeals' decision that a claim for tradename or trademark infringement sufficient to withstand the summary judgment motion to dismiss has not been made here. I employ the rationale on which the circuit court granted summary judgment, which also was presented to us. Accordingly, I respectfully dissent from the majority opinion.

## I. BACKGROUND

¶45 On December 6, 1985, Ted and Carolyn Ritter (the Ritters) formed a Wisconsin corporation, Bibs Resort, Inc. In early 1986, the corporation purchased resort property on Little St. Germain Lake. They improved the resort property and gave the resort a new name, Bibs Resort. They also created a logo,

1

which included "BIBS Resort" with a pair of bibbed overalls that have a handkerchief hanging out of the back pocket.

¶46 Bibs Resort consisted of 11 cottages, a bar and game room and the Ritters' residence. The Ritters managed the resort property, rented the cottages and operated the bar. The name, Bibs Resort, and the logo have been associated with this resort on Little St. Germain Lake since 1986.

¶47 On May 19, 1998, Bibs Resort, Inc., as the Declarant, formed Bibs Resort Condominium and transferred all real property and improvements thereon into the condominium form of use and ownership pursuant to Wisconsin Statutes.[1] That same day, the Bibs Resort Declaration of Condominium was recorded at the Office of the Register of Deeds for Vilas County, Wisconsin.[2]

¶48 The Declaration of Condominium named Bibs Resort Condominium, Inc., a nonstock corporation, as the managing entity of Bibs Resort Condominium.[3] The bylaws of the association were designated as the bylaws of Bibs Resort Condominium.[4] The Board of Directors of Bibs Resort Condominium

---

[1] "A condominium is a form of ownership of real property that combines two separate forms of ownership interest: the individual ownership of the dwelling unit and the undivided common ownership, with other unit owners, of the common elements of the condominium parcel." Solowicz v. Forward Geneva Nat'l LLC, 2010 WI 20, ¶19, 323 Wis. 2d 556, 780 N.W.2d 111 (citing Joseph W. Boucher et al., Wisconsin Condominium Law Handbook § 1.17 (3rd ed. 2006)).

[2] R. 36 at 8.

[3] R. 36 at 10, 20.

[4] R. 36 at 20-21. The bylaws of the condominium association are not part of the record before us.

Association had the right to contract with any firm, person or corporation for the maintenance and repair of the condominium common area and properties.[5]

¶49 The Ritters continued to operate Bibs Resort as they had in the past, by maintaining the grounds, renting cottages and operating the bar. They did so through written contracts with Bibs Resort Condominium, Inc. that could be cancelled with 90 days written notice by either party.

¶50 On May 24, 1998, Unit 10 of Bibs Resort Condominium was sold to the Sorensens, and on June 30, 1998, Unit 9 was sold to the Sorensens. The Sorensens' purchases included the right to use the name Bibs Resort and the logo when they rented their cottages, which name and logo were affixed to their individual cottages.

¶51 On April 8, 2002, Unit 1 was sold to the McGinns, with Bibs Resort and logo attached to their individual cottage. They too obtained the right to use the name and logo. On September 16, 2005, Unit 6 was sold to the Abrahams, again with Bibs Resort name and logo affixed to their cottage. They too had the right to use the name and logo of Bibs Resort when they marketed their cottage.

¶52 On May 27, 2006, unit number 12 was sold to the Farrows, again with the Bibs Resort logo affixed to cottage 12 and the right to use the name, Bibs Resort. At that time, the Farrows were given copies of all Bibs Resort Condominium documents, including the Declaration of Condominium, the

---

[5] R. 36 at 30.

Condominium Plat, By-laws and Rules and Regulations.[6] The Farrows knew that the rental agreements the Ritters had in place could be terminated by either party with 90 days written notice.[7] The Farrows' attorney insisted that new rental agreements be prepared.[8] Those new rental agreements also contained the right of either party to terminate the agreement with 90 days written notice.[9] On June 23, 2006, Unit 13 (Northwoods Pub and Grill) was sold to the Farrows, once again with the Bibs Resort name and logo affixed. The Ritters continued to own seven units in the condominium, which cottages were available for rental.

¶53 On June 23, 2006, the Farrows also purchased the opportunity to enter into contracts with Bibs Resort Condominium to manage the common areas and with owners of individual condominium units to manage their individual cottages.

¶54 That same day, the Farrows reported a business transfer for the "management of vacation resort" between Bibs Resort, Inc. and Farrow Enterprises, Inc. to the Wisconsin Division of Unemployment Insurance.[10] BIBS Resort was stated as the "tradename." On September 7, 2006, the Ritters and the Farrows sent the Wisconsin Department of Revenue a letter stating: "Anthony and Arlyce Farrow, corporate officers of

---

[6] R. 77 at 3, 4.

[7] R. 77 at 4.

[8] Id.

[9] Id.

[10] R. 36 at 50.

4

Farrow Enterprises, Inc., would like to use the name BIBS Resort as a trade name since they are handling advertising, reservations and payments under that name. Ted and Carolyn Ritter are amenable to that change."[11]

¶55 In 2006, the Bibs Resort Condominium Association and the owners of cottages 10, 9, 6 and 1 entered into management agreements with Farrow Enterprises, Inc., which included the option for either party to terminate the agreement with 90 days written notice, just as the management contracts had when the Ritters were providing management services.

¶56 Several years later, problems developed with the Farrows' management of the resort, although there are no findings in the record as to what they were. In September and October of 2009 and in March of 2010, the Farrows' contracts with the condominium association and the individual cottage owners were terminated with the required 90-day written notices.

¶57 On November 19, 2008, Farrow Enterprises, Inc., applied to the Wisconsin Secretary of State to register Bibs Resort logo as a trademark. In her application, Arlyce Farrow represented that the date of first use of the Bibs Resort logo was "June 1, 2006." After being duly sworn, she averred that:

> [T]he registrant has the right to the use of the subject of the registration applied for, and that no other person or persons, firm, partnership, corporation, association or union of workers has such right either in the identical form or in any such near resemblance thereto as may be calculated to deceive.[12]

---

[11] R. 36 at 58.

[12] R. 77 at 15-17.

¶58 On February 17, 2010, Farrow Enterprises, Inc. applied to the Wisconsin Secretary of State to register "Bibs Resort" as a tradename. On her application, Arlyce Farrow represented that the date of first use of the Bibs Resort name was "June 23, 2006." After being duly sworn, she again averred that in regard to Farrow Enterprises right to use the name Bibs Resort, "no other person or persons, firm, partnership, corporation, association or union of workers has such right either in the identical form or in any such near resemblance thereto as may be calculated to deceive."[13]

¶59 In her affidavit supporting summary judgment of dismissal of the Farrows' claim of tradename/trademark infringement and based on personal knowledge, Carolyn Ritter averred that the right to use the name Bibs Resort was given to Bibs Resort Condominium when that form of ownership was created in 1998 by Bibs Resort, Inc., the corporation of which she and her husband, Ted, were the sole shareholders.

¶60 She averred that individual cottages were rented using Bibs Resort as their name, and she attached a Vilas County Public Health Department license permitting rentals of units of "Bibs Resort Condominium."[14] She also attached pictures of signage that gave directions to the location of "BIBS Resort" and employed the Bibs logo, which signs were created, paid for and maintained by Bibs Resort Condominium Association.[15]

---

[13] R. 77 at 18, 19.

[14] R. 77 at 11.

[15] R. 77 at 23.

6

¶61 Carolyn Ritter further averred that the Town of St. Germain's real estate tax bills for individual units at Bibs Resort Condominium used the name "Bibs Resort Condominium" as identification. She attached examples of the Town of St. Germain's tax bills.[16] She said that every person who purchased a unit in Bibs Resort Condominium had the right to use the name Bibs Resort and the logo in marketing their cottages. During the summary judgment proceedings before the circuit court, the Farrows did not offer any evidence to dispute Carolyn Ritters' statement that owners of individual units and the Bibs Resort Condominium association had been given rights to use the Bibs Resort name and logo.

¶62 In its summary judgment decision, the circuit court concluded that, based on uncontested material facts, in 2006 the Farrows could not have received the right to exclusive use of the name, Bibs Resort, or the logo from either the Ritters or the Bibs Resort Condominium because neither the Ritters nor the Bibs Resort Condominium had the right to exclusive use to impart to anyone. The court further explained:

> Prior to the 2006 transaction between the Ritters and the Farrows the Ritters had already granted the other unit owners -- the Sorensens, the McGinns, and the Abrahams -- the right to use the Bibs name and logo in marketing the cabins. Those unit owners already had a vested interest in the use of those trademarks, and the interests of those third parties cannot be extinguished by an agreement between the Farrows and the Ritters alone.
>
> . . . .

---

[16] R. 77 at 13, 14.

7

The individual unit owners had the right to use the Bibs name and logo, the logo was posted on each unit, just as the Farrows had been given that right when they bought their units.[17]

¶63 The Farrows appealed, and the court of appeals affirmed. The court of appeals concluded that based on undisputed material facts when the Farrows purchased two units in the condominium and the opportunity to manage Bibs Resort Condominium, others already had obtained the right to use the Bibs Resort name and logo; therefore, the Farrows did not obtain the right to exclusive use of the Bibs Resort name or logo when they purchased the business opportunity. See Ritter v. Farrow, 2019 WI App 46, ¶36, ¶38 n.12, 388 Wis. 2d 421, 933 N.W.2d 167.

## II. DISCUSSION

### A. Standard of Review

¶64 This case presents as a review of the decision of the court of appeals that affirmed the summary judgment decision of the Vilas County Circuit Court[18] dismissing the Farrows' claim that the Ritters infringed their tradename/trademark. Whether summary judgment was properly granted is a question of law that we review independently, while applying the same methodology as the circuit court and the court of appeals. Hoida, Inc. v. M&I Midstate Bank, 2006 WI 69, ¶15, 291 Wis. 2d 283, 717 N.W.2d 17 (citing Cole v. Hubanks, 2004 WI 74, ¶5, 272 Wis. 2d 539, 681 N.W.2d 147); see also Sands v. Menard, 2017 WI 110, ¶28, 379 Wis. 2d 1, 904 N.W.2d 789. In our review, we benefit from the

---

[17] R. 335 at 8.

[18] The Honorable Michael H. Bloom presided.

8

previous courts' discussions. <u>Showers Appraisals, LLC v. Musson Bros. Inc.</u>, 2013 WI 79, ¶21, 350 Wis. 2d 509, 835 N.W.2d 226.

## B. Summary Judgment Principles

¶65 Every decision on a motion for summary judgment begins with a review of the complaint (here, a counterclaim) to determine whether, on its face, it states a claim for relief. <u>Hoida</u>, 291 Wis. 2d 283, ¶16. If it does, then we examine the answer to see if issues of fact or law have been joined. <u>Id.</u> After determining that the complaint and answer are sufficient to join issue, we examine the moving party's affidavits to determine whether they establish a prima facie case for summary judgment in the movant's favor.[19] <u>Id.</u> When they do, we review the opposing party's affidavits to determine whether those affidavits establish that there are material facts in dispute,

---

[19] A moving party's affidavits based on personal knowledge and submitted during a summary judgment proceeding should not be discarded as "self-serving," and "unsupported" which is how the majority opinion discounts them. Majority op., ¶37 n.16. Affidavits given under oath and based on personal knowledge are an evidentiary portion of the statutory process that is employed when a court is deciding a summary judgment motion. Wis. Stat. § 802.08(3).

The majority opinion's disregard for established rules of summary judgment will cause confusion in circuit courts who are expected to follow Wis. Stat. § 802.08(3) and case law in regard to summary judgment motions. <u>Augustine v. Anti-Defamation League of B'Nai B'Rith</u>, 75 Wis. 2d 207, 221, 249 N.W.2d 547 (1977) (explaining that when affidavits based on personal knowledge present material facts they may make a prima facie case for summary judgment); <u>Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.</u>, 2002 WI 80, ¶18, 254 Wis. 2d 77, 646 N.W.2d 777 (concluding that to defeat summary judgment there must be a genuine issue of material fact apparent in the affidavits submitted).

or inferences from undisputed material facts, that would entitle the opposing party to a trial to determine those facts. Id. We affirm a grant of summary judgment when this process shows that there are no disputes of material fact. Id. "'[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment,' so long as there is no disputed fact that is material to the claim or defense made." Id. (quoting City of Elkhorn v. 211 Centralia St. Corp., 2004 WI App 139, ¶18, 275 Wis. 2d 584, 685 N.W.2d 874).

### C. Infringement Principles

¶66 The sole remaining claim from the Farrows' counterclaims is whether the Ritters infringed their tradename/trademark.[20] Wisconsin recognizes a claim for relief at common law for tradename or trademark infringement. "Infringement actions, even against a non-competitor, protect the reputation and goodwill exclusively appropriated to the trademark holder." Spheeris Sporting Goods, Inc. v. Spheeris on Capitol, 157 Wis. 2d 298, 312, 459 N.W.2d 581 (1990). As claimed in First Wis. Nat. Bank of Milwaukee v. Wichman, 85 Wis. 2d 54, 270 N.W.2d 168 (1978), the plaintiff must allege infringement of its common law rights to the exclusive use of certain words, there, "First Wisconsin." Id. at 60.

---

[20] Notably, there can be no claim for the violation of a non-compete agreement in the case before us. A non-compete agreement was not alleged to have been agreed to or breached. However, to me, the Farrows really are complaining that they are injured because the Ritters competed with them.

¶67 Without the right to exclusive use, an action for tradename or trademark infringement cannot be maintained. Marshall v. Pinkham, 52 Wis. 572, 590, 9 N.W. 615 (1881). Marshall involved a liniment that the father, Samuel Marshall, first prepared and sold under his name, with a label that contained a particular vignette of a horse's head. Id. at 574-75. Over the course of several years he gave his seven children the formula for the liniment, which they manufactured and sold on their own. Samuel generally provided the labels for them to use. Id. at 575. After Samuel died, his widow, Mary, continued to manufacture and sell the liniment, as did a number of their children. Id.

¶68 Some years later, one son, Charles H., bought out the liniment business his mother had operated. Id. He then brought a suit for trademark infringement to enjoin the manufacture and sale of the liniment by others. He claimed that his father had left the rights for the liniment to Mary and that he had purchased those rights from her. The trial court dismissed the suit after determining that plaintiff did not have the right to exclusive use of the name or label. Id. at 577. We agreed stating:

> [I]t would seem to be very certain that Charles H. never acquired an exclusive right to the use of the word "Marshall's" or "Old Dr. S. Marshall's" upon the liniment put up by him, as against his father, mother, brothers or sisters. If the plaintiff Charles H. never acquired any such exclusive right as against them, it would seem quite doubtful whether he ever acquired it as against any one. . . . The question occurs, [w]hom does the word "Marshall's" point out as the true source, origin, or owner of the original genuine mixture, or what particular place of business

11

or sale has it designated during these many years?  If it never in fact truly so pointed out or designated, or if by its distributive use, . . . it ceased to perform that function, then it can no longer be protected as a trade-mark.

Id. at 582-83.  We explained that "[a]s no exclusive right of either of the plaintiffs was invaded, they were not entitled to an injunction by reason of any mere absence of such right on the part of the defendant."  Id. at 590.

### D.  Farrows' Infringement Claim

¶69  The Farrows would like to return to the circuit court to pursue a claim for infringement of tradename/trademark based on their purchase of a business opportunity from the Ritters. In order to do so, they must allege material facts sufficient to prove that they have the right to exclusive use of the name, Bibs Resort, and its overalls logo.  First Wisconsin, 85 Wis. 2d at 60; Marshall, 52 Wis. at 582; Spheeris, 157 Wis. 2d at 312.

¶70  As I begin the required summary judgment methodology, I examine the Farrows' counterclaim allegations and the responses that are asserted by the Ritters relative to the Farrows' infringement claim.  The Farrows' alleged that they "own the common law and state-registered trademark, 'BIBS Resort.'"[21]  The Ritters respond that "Defendants do not have an exclusive propriety interest in the [logo], 'BIBS Resort,' as said [logo] is part of the name and legal description of the condominium in which all unit owners have an interest, including the right to use the same."[22]  They further contend that

---

[21] R. 2 at 12, ¶44.

[22] R. 30 at 9, ¶26.

12

"Defendants have no exclusive proprietary interest in the name of 'BIBS Resort.'"[23] The Ritters further contend, as an affirmative defense, that the Farrows pleadings fail to state a claim.[24]

¶71 In determining whether pleadings state a claim for relief, we liberally construe what has been alleged. John Doe 1 v. Archdiocese of Milwaukee, 2007 WI 95, ¶12, 303 Wis. 2d 34, 734 N.W.2d 827. The word, "own," which the Farrows used to describe their interest in the Bibs Resort logo, is an undefined term that could convey a number of properties. Therefore, I conclude that their complaint could state a claim for trademark infringement. The Ritters deny the Farrows' allegations and affirmatively allege that in order to proceed with a claim of infringement, the Farrows must have the right to exclusive use of the name, Bibs Resort, and its logo, which they do not have. Accordingly, at that stage of the summary judgment methodology, I conclude that issue has been joined on whether the Farrows have a claim for tradename/trademark infringement.

¶72 The Ritters moved for summary judgment dismissing the Farrows' infringement claim. They provided the affidavit of Carolyn Ritter, which is based on her personal knowledge. To her affidavit, they attached documents showing that since at least 1998, when Bibs Resort Condominium was formed, others in

[23] R. 30 at 10, ¶28.

[24] R. 30 at 15, ¶41, H.

13

addition to the Ritters have had the right to use the name, Bibs Resort, and its logo.[25]

¶73 Her affidavit averred that when individual units in Bibs Resort Condominium were sold in 1998, 2002 and 2006, the unit owners were given the right to use the name, Bibs Resort, and its logo to advertise rentals of their individual cottages. The documents attached to the affidavit showed that the Town of St. Germain also used the name, Bibs Resort Condominium, when it taxed individual unit owners, and the Vilas County Department of Health issued rental permits to unit owners for property known as Bibs Resort.[26] The affidavit also attached pictures of signs showing directions to the location of "Bibs Resort"; the signs used the BIBS Resort logo too.[27] Those advertisements were created, maintained and paid for by the condominium association for Bibs Resort Condominium.[28]

¶74 These submissions made a prima facie case for dismissal of the Farrows' infringement claim because the undisputed, material facts demonstrated that in 2006 the Ritters no longer had the right to exclusive use of the name, Bibs Resort, or its logo; and therefore, the Ritters could not transfer the right to exclusive use of the name or logo to the Farrows. First Wisconsin, 85 Wis. 2d at 60; Marshall, 52 Wis.

---

[25] R. 77 at 11.

[26] R. 77 at 13, 14.

[27] R. 77 at 23.

[28] R. 77 at 23.

at 582; Spheeris, 157 Wis. 2d at 312. The Farrows submitted nothing in opposition to the Ritters' submissions in support of their motion for summary judgment dismissing the Farrows' infringement claim.

¶75 Although Farrow Enterprises, Inc. twice attempted to register Bibs Resort and its logo with the Wisconsin Secretary of State pursuant to Wisconsin Statutes, and they alleged infringement of a "registered mark" in their counterclaim, the Farrows did not continue with the contention that they had a registered mark during the summary judgment proceedings. However, if they had, they would have had to prove that they have the right to exclusive use of the name, Bibs Resort, and its logo, because exclusivity of use is a requirement for registering a trademark in Wisconsin.

¶76 The requirement of exclusivity of use is apparent from the statement that the Secretary of State requires be given under oath on the registration form and also from the plain meaning of Wis. Stat. §§ 132.01(1) and (7)(a). The Secretary of State's form provides:

> [T]he registrant has the right to the use of the subject of the registration applied for, and that no other person or persons, firm, partnership, corporation, association or union of workers has such right either in the identical form or in any such near resemblance thereto as may be calculated to deceive.[29]

The plain meaning of §§ 132.01(1) and (7)(a) is consistent with the Secretary of State's form. They provide a protectable mark

---

[29] R. 77 at 15-17 (emphasis added).

15

if the registrant has the right to exclusive use of the mark. The plain meaning of those statutes are consistent with Wisconsin common law, as related in my discussion above. Section 132.01 provides in relevant part:

> (1) [Registration requires] . . . that the party, on whose behalf such mark is to be filed, <u>has the right to the use</u> of the same, and that <u>no other</u> person, or persons, firm, partnership, corporation, association, or union of workingmen <u>has such right</u> . . . .
>
> . . . .
>
> (7) The department shall do all of the following:
>
> (a) Cancel from his or her register any registration . . . if a final judgment in any court of competent jurisdiction finds that . . . the registrant does not have the <u>right to the exclusive use</u> of the registration.

(Emphasis added). Accordingly, if a registrant obtains Wisconsin registration by representing registrant has the right to exclusive use of a trademark and a court determines that the registrant does not have the right to exclusive use, the registration will be cancelled. Therefore, the right to exclusive use is critical to a claim of infringement, whether under statutory or common law.

¶77 Few cases employ Wisconsin's trademark statutes, and those that I found are not on-point with the dispute before us. For example, <u>Mil-Mar Shoe Co., Inc. v. Shonac Corp.</u>, 75 F.3d 1153 (7th Cir. 1996), which relied on Wis. Stat. ch. 132, turns on whether an alleged trademark is generic or descriptive, an issue not present in the dispute before us.

16

¶78 D.L. Anderson's Lakeside Leisure Co., Inc. v. Anderson, 2008 WI 126, 314 Wis. 2d 560, 757 N.W.2d 803 is somewhat helpful in regard to common law. Over the years, D.L. Anderson developed a business of selling marine services and products. In 2000, Scott Statz and Steven Statz (the Statzes) purchased that business for $891,000. Under the sales agreement, the Statzes purchased "restrictions on competition," for which they paid $400,000, and the right of the "use" of the tradename, D.L. Anderson Co., for which they paid $200,000. Id., ¶7.

¶79 About two years after the Statzes' purchase, Anderson began working in areas that the Statzes believed violated the noncompetition provision of their asset purchase agreement. Id., ¶¶10-13. In 2004, the Statzes filed suit against Anderson, alleging breach of the noncompetition provisions of the purchase agreement, infringement of tradename, unfair competition and breach of contract. Id., ¶14. The jury found in favor of the Statzes. Id., ¶15.

¶80 On review, Anderson claimed that the jury instructions were erroneous. The Statzes said that Anderson waived the error because he did not raise it before the circuit court. We agreed Anderson did not raise it, however, we exercised our discretion and reviewed the instructions given. Id., ¶41.

¶81 While there are parts of D.L. Anderson's Lakeside Leisure that address infringement issues not present in the case before us, D.L. Anderson's Lakeside Leisure confirms that an infringement claim must be grounded in the right to exclusive

17

use of the tradename. Id., ¶42. We cited First Wisconsin, which concluded that infringement claims require exclusivity of use of a trademark, and Spheeris, which, again, relied on exclusivity of use as a requirement for an infringement claim. Id.

¶82 Because there is little state law on tradename/trademark infringement, courts sometimes look to federal law. While such consideration may be helpful, it can lead a court to err if the court does not recognize significant differences in state and federal law relative to tradenames/trademarks.

¶83 One significant difference is the effect of federal registration under the Lanham Act. Such registration "shift[s] the burden of proof from the plaintiff, who in a common law infringement [claim] would have to establish his right to exclusive use, to the defendant, who must introduce sufficient evidence to rebut the presumption of plaintiff's right to such use." Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366, 373 (1st Cir. 1980), repudiated on other grounds by Miller Brewing Co. v. Falstaff Brewing Corp., 655 F.2d 5 (1st Cir. 1981). "Under the Lanham Act, registration of a mark is prima facie evidence of the 'the registrant's exclusive right to use the registered mark in commerce [] or in connection with the goods or services specified in the registration.'" Black Dog Tavern Co., Inc. v. Hall, 823 F. Supp. 48, 53 (D. Mass. 1993) (quoting 15 U.S.C. § 1115(a)).

¶84 Therefore, relying on federal cases with underlying Lanham Act registration can be troublesome if a question presented is whether the claimant has the right to exclusive use of the tradename/trademark because federal cases with underlying Lanham Act registration will presume that claimant has such a right. Under Wisconsin common law, a claimant is required to prove possession of the right to exclusive use of the tradename/trademark. Marshall, 52 Wis. at 582.

¶85 Stated otherwise, relying on federal case law for a Wisconsin common law claim can cause a court to fail to analyze what state common law requires as the foundation for an infringement claim, i.e., the possession of the right to exclusive use of the tradename or trademark. Missing that foundation can cause a court to get tangled in other issues that may be presented but are not relevant to deciding an infringement action where the right to exclusive use has not been proved. As basic tradename/trademark hornbook law provides, "[i]n a trade name infringement action, the plaintiff is required to establish a right to exclusive use of the name." Robin Cheryl Miller, 17 Causes of Action 579 § 5 Cumulative Supp. (updated Nov. 2020).

¶86 Simply stated, because a tradename or trademark is often employed to identify the source of goods or services, if others have the right to use the same name or mark, the name or mark does not identify the source of goods or services.[30]

---

[30] One can license a tradename so that others can use it. McDonald's is an example of such licensing, but licensing has no relevance to the case before us.

Accordingly, a seller who no longer has the right to exclusive use of a tradename/trademark cannot sell it to someone else.

¶87 The case now before us was properly dismissed by the circuit court in a well-reasoned opinion.[31] At summary judgment, it became apparent that based on uncontroverted material facts, the Farrows' counterclaim for infringement failed. It failed because the Farrows never provided any evidentiary proof that the Ritters had the right to exclusive use of the name and logo for Bibs Resort at the time of the Farrows' 2006 purchase. The right to exclusive use of a tradename/trademark is required to sue for infringement. First Wisconsin, 85 Wis. 2d at 60; Marshall, 52 Wis. at 582; Spheeris, 157 Wis. 2d at 312. The only proof on the right to exclusive use was uncontroverted. Carolyn Ritter averred, based on personal knowledge, that she and her husband had dispersed the right to use Bibs Resort and its logo to others long before their 2006 transaction with the Farrows.

### E. Majority Opinion

¶88 The majority opinion leads itself into error because it misstates the dispositive issue in the case, saying: "These designations relate to a lakefront resort in St. Germain,

---

[31] Because I employ the same rationale as the circuit court (that the Farrows did not establish the right to exclusive use of the Bibs' Resort name and logo), I need not address another rationale utilized by the court of appeals. I observe, however, that renters likely chose to visit Bibs Resort in part because of its location rather than due to fungible management services. See ABKA Ltd. P'Ship v. Bd. of Review of the Vill. of Fontana-on-Geneva Lake, 231 Wis. 2d 328, 342, 603 N.W.2d 217 (1999).

Wisconsin, and we are asked to determine their ownership."[32] And it repeats this concept frequently, "we must ascertain whether the circuit court applied the well-settled principles of trademark and trade name law in determining the exclusive owner of the Bibs Resort marks."[33] And further, "the Farrows owned the Bibs Resort marks as of 2006 when they purchased the Ritters' business."[34]

¶89 The word "ownership" creates a foundational problem in the majority's analysis because the analysis does not recognize that for ownership to matter in an infringement claim, it must include ownership of the right to exclusive use of the name and logo.[35] First Wisconsin, 85 Wis. 2d at 60; Marshall, 52 Wis. at 582; Spheeris, 157 Wis. 2d at 312; see also Wis. Stat. §§ 132.01(1) and (7)(a).

---

[32] Majority op., ¶1.

[33] Id., ¶24.

[34] Id., ¶41.

[35] In addition to missing the issue on which this infringement claim turns, the majority opinion also is internally inconsistent such that it will be difficult for circuit courts to apply. To explain further, the majority's holding rests upon its statement that "[i]t is a well-settled legal principle that trademarks and their associated goodwill pass with the sale of a business." Majority op., ¶4. However, later in the opinion when hornbook and federal case law are cited, this "well-settled principle" becomes a bit more tentative. It morphs into only a presumption that trademarks pass with the sale of a business. See id., ¶¶29, 40. So which is it? Is it a well-settled principle or merely a rebuttable presumption, i.e., a well-settled principle that absent contrary evidence it is presumed to pass? This inconsistency may undermine the ability of future courts to apply the majority opinion.

¶90 The majority opinion also ignores summary judgment methodology even though it acknowledges it is to apply the same methodology as the circuit court applied.[36] If the majority opinion had not skipped this critical step, it may have avoided error.

¶91 However, the majority also relies on federal case law when a tradename or trademark has been registered under the Lanham Act, where the right to exclusive use is presumed once registration has occurred.[37] Keebler, 624 F.2d at 373. The common law of Wisconsin requires the claimant in an infringement action to prove it has the right to exclusive use. First Wisconsin, 85 Wis. 2d at 60; Marshall, 52 Wis. at 582; Spheeris, 157 Wis. 2d at 312. The opinion also gets all tangled up in asserted connections between goodwill and tradenames, which issues are not relevant to the dispute before us.[38]

¶92 The majority opinion says that the dissent "conflates trademark use with trademark ownership."[39] That statement shows a basic misunderstanding of the law. To explain, if the Farrows "ownership" includes the right to exclusive use of the name, Bibs Resort, and its logo, they can maintain a claim for tradename/trademark infringement. If their ownership is a right to shared use of the name and logo with others who were given

---

[36] Majority op., ¶24

[37] Id., e.g., ¶29.

[38] Id., e.g., ¶34.

[39] Majority op., ¶41 n.18.

22

the right to use the name and logo when marketing their cottages, then the Farrows cannot maintain a claim of tradename/trademark infringement. The right to exclusive use is required to be proved as a fact in order to maintain a claim for tradename/trademark infringement. First Wisconsin, 85 Wis. 2d at 60; Marshall, 52 Wis. at 582. When this matter returns to the circuit court, the Farrows must prove that their "ownership" includes the right to exclusive use of the name and logo; otherwise, they cannot maintain a tradename/trademark infringement action. Id.

¶93 At its core, this case is about whether the Ritters had dispersed the right to use Bibs Resort and its logo to others before the sale to the Farrows. The undisputed record shows that they did. Individual condominium owners were given the right to use the name and logo when they purchased their individual cottages; the operating company, Bibs Resort Condominium, Inc., also was given the right to use the name and logo, which it did, as shown by the pictures in the record of the signs that the association created and maintained.

¶94 Certainly, the Farrows had a right to use the Bibs Resort name and logo; however, it was not the right to exclusive use. And therein lies the problem. The right to exclusive use of a tradename or trademark is required to maintain an infringement action under Wisconsin law. Id.

### III. CONCLUSION

¶95 I conclude that application of Wisconsin common law to the questions presented requires affirming the court of appeals decision that a claim for tradename or trademark infringement sufficient to withstand the summary judgment motion to dismiss has not been made here. I employ the rationale on which the circuit court granted summary judgment, which also was presented to us. Accordingly, I respectfully dissent from the majority opinion.

¶96 I am authorized to state that Justices ANN WALSH BRADLEY and ANNETTE KINGSLAND ZIEGLER join this dissent.

1