COURT OF APPEALS
DECISION
DATED AND FILED

July 11, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1488**

Cir. Ct. No. **2017CV535**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

ELAINE STRASSBURG,

   PLAINTIFF-APPELLANT-CROSS-RESPONDENT,

V.

HICKORY MEADOWS ASSOCIATION, INC.,

   DEFENDANT-RESPONDENT-CROSS-APPELLANT.

---

APPEAL and CROSS-APPEAL from a judgment of the circuit court for Rock County: JEFFREY KUGLITSCH, Judge. *Affirmed*.

Before Kloppenburg, P.J., Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1   PER CURIAM. Hickory Meadows Condominium ("Hickory Meadows") consists of 70 condominium units, including nine unbuilt units that are

owned by Hickory Meadows Association, Inc. ("the Association"). The Association had no revenue to pay the assessments due on these Association-owned units other than by apportioning those assessments among the 61 members of the Association who owned units, so that each member paid 1/61 of the Association's expenses. However, Hickory Meadows' declaration and bylaws, prior to the bylaws' amendments that are at issue on appeal, prohibited the Association from assessing its 61 members more than 1/70 of the Association's annual expenses. This resulted in a revenue shortfall for the Association that endangered the Association's long-term solvency.

¶2     This declaratory judgment action concerns the Association's attempts to assess its members in a way that covers its annual expenses without violating Hickory Meadows' declaration and bylaws or Wisconsin's Condominium Ownership Act, WIS. STAT. ch. 703 (2021-22) ("the Act").[1] Both parties challenge circuit court decisions made prior to the entry of final judgment. Specifically, Elaine Strassburg challenges the circuit court's denial of her contempt motion. The Association cross-appeals, challenging the court's earlier orders granting partial summary judgment in Strassburg's favor. For the reasons explained below, we affirm.

## BACKGROUND

¶3     Hickory Meadows was created by the execution and recording of the Condominium Declarations for Hickory Meadows Condominium ("the declaration"). The Association is a condominium association that governs the

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version.

affairs of Hickory Meadows. Strassburg owns a unit at Hickory Meadows and is a member of the Association.

¶4     As stated, Hickory Meadows is comprised of 70 units. Of those 70 units, 11 had not been built at the time of the circuit court proceedings in this case; and of those 11 unbuilt units, the Association owns nine.[2]

¶5     At one point, the Association sold four of the unbuilt units that it owned to individuals who owned built units at Hickory Meadows ("the buyers"). The Association represented to the buyers that the sold, unbuilt units would be assessed at a lower rate than the rate that applied to the built units.

¶6     The Association assessed the sold units as promised. However, Hickory Meadows' declaration provides that "[t]he method of assessment and obligations for repair and maintenance shall be as provided in the By-laws," and at that time, the Association's bylaws provided that units must be assessed 1/70 of the Association's common expenses.[3] In a separate action, Strassburg and other unit owners sued the Association, and the circuit court in that case ruled, in what we refer to as the "2015 ruling," that pursuant to Hickory Meadows' declaration and bylaws, the unbuilt units must be assessed 1/70 of the Association's common expenses.

---

[2] The two unbuilt units that are not owned by the Association are not at issue on appeal.

[3] Specifically, the bylaws stated that the "common charges" required to meet the Association's common expenses would be assessed against unit owners "on an equal per unit basis based on the Unit Owner's interest in the Condominium as described in the Declaration." The declaration, in turn, stated that "each Unit and its owner shall have a 1/70[] undivided interest in common with all other Units and Unit Owners in the Common and Limited Common Areas."

¶7     After the 2015 ruling, the buyers threatened legal action unless the Association took back the sold units, which the Association, on the advice of counsel, did.  In its annual budget, the Association began to characterize the assessments on the Association-owned units, which once again numbered nine, as expenses.  The Association apportioned those assessments among its 61 members, with the result that each member was assessed more than 1/70, specifically 1/61, of the Association's expenses.

¶8     Strassburg commenced this action in 2017, seeking a declaratory judgment that the Association's method of assessing common expenses violated the 2015 order, the Act, and Hickory Meadows' declaration and bylaws because it resulted in the Association's members being assessed for more than 1/70 of the Association's expenses.  Strassburg moved for partial summary judgment on the issue.

¶9     Although the circuit court initially denied Strassburg's motion for partial summary judgment, it granted Strassburg's motion after Strassburg moved for reconsideration.  Specifically, in what we refer to as the "2019 ruling," the court "declar[ed] that [the Association's] practice of treating assessments on condominium units it owns as common expenses, resulting in other unit owners paying greater than a 1/70 share of the … [A]ssociation's actual expenses for maintenance of the common elements, is unlawful" because it violated the Act, Hickory Meadows' declaration and then-existing bylaws, and the 2015 order.

¶10     In response to the 2019 ruling, the Association again changed its assessment method, as reflected in its 2020 budget.  After the Association adopted its 2020 budget, Strassburg was granted leave to file an amended and supplemental complaint ("the amended complaint").  Pertinent to this appeal,

Strassburg's amended complaint alleged that the Association's 2020 budget violated the 2015 and 2019 orders, Hickory Meadows' declaration and bylaws, and the Act by characterizing the assessments of the Association-owned units as common expenses of the Association to be borne by the other unit owners.[4] After Strassburg filed her amended complaint, the Association consulted with a CPA specializing in accounting and tax services for condominium associations, who opined that the Association's 2020 budget complied with the 2019 ruling and that the Association was required to list the assessments on the Association-owned units as expenses to comply with the Act.

¶11 Strassburg again moved for partial summary judgment, arguing that the Association's 2020 budget "continue[d] to pass along the assessments on [Association]-owned units to its member-owners." The circuit court granted Strassburg's motion, in what we refer to as the "2021 ruling." The court stated,

> By adding in those [A]ssociation-owned charges and their share of common expenses, however they want to call it, it appears again [the Association is] still charging 1/61. This continues, in the court's opinion, to be a violation of the statutes and the [d]eclaration[]. It's a determination of the court that [the Association] must comply with [the Act] and assess the units at a 1/70[] rate until such time as they change their [d]eclaration and/or bylaws to reduce the units to 61 or some other number.

The court enjoined the Association, in its 2020 budget and in its planned 2021 budget, "from assessing any unit owner in the Hickory Meadows Condominium more than 1/70 of the common expenses of the Condominium," and from

---

[4] Strassburg's amended complaint also added various claims based on allegations that the Association approved gardens and plantings around Strassburg's unit but then destroyed those gardens and plantings. Those claims are not at issue on appeal.

"includ[ing] in such common expenses the assessments on units … owned by the [Association]."

¶12    In response to the 2021 ruling, the Association amended Hickory Meadows' bylaws.[5] As noted above, the bylaws had stated that the Association's common expenses would be assessed against unit owners "on an equal per unit basis based on the Unit Owner's interest in the Condominium as described in the Declaration," which states that each unit had a l/70 interest. By contrast, under the amended bylaws, the assessments are no longer based on the unit owners' interest in the common elements. Instead, the amended bylaws' new assessment method distinguishes between built and unbuilt units, and divides the Association's expenses into four categories: (1) Greens and Grounds, (2) Buildings Repair and Maintenance, (3) Administration, and (4) Reserves. All built units are assessed equally for expenses in the first, third, and fourth categories. Built units are assessed for the second category of assessments based on their square footage. The second category of assessments does not apply to the unbuilt units, and the unbuilt units' assessments for the first, third, and fourth categories are half that of the built units' assessments in those categories.

¶13    The amended bylaws also expressly provide that the assessments for Association-owned units will be budgeted as an expense in the Association's annual budget: "Any assessments against Units owned by the Association shall have a corresponding equal expense entry entitled 'Assessments – Association[-]owned Units' since there will be no income at times from

---

[5] The Association also replaced the majority of its board of directors and elected a new treasurer with a background in accounting.

Association[-]owned Units from which to pay the assessment." As a common expense, the assessments for the Association-owned units are borne by the Association's members through the assessments that the members pay. The bylaws' amendments were adopted with 47 unit owners voting for the amendments, and six unit owners voting against them.

¶14 After the Association amended the bylaws, Strassburg filed a motion for contempt, arguing that the Association was in contempt of the 2019 and 2021 orders by continuing to classify the assessments on the Association-owned units as common expenses for which the Association's members could be assessed. The circuit court denied Strassburg's motion.

¶15 The circuit court reasoned that WIS. STAT. § 703.16(2)(a) contains a statutory default, which states that funds for common expenses shall be obtained in proportion to owners' percentage interests in the common elements, but that § 703.16(2)(a) also allows owners to be assessed "as otherwise provided in the declaration." *See* § 703.16(2)(a) ("Funds for the payment of common expenses and for the creation of reserves for the payment of future common expenses shall be obtained by assessments against the unit owners in proportion to their percentage interests in the common elements or as otherwise provided in the declaration."). The court explained that at the time of the 2015, 2019, and 2021 rulings, Hickory Meadows' declaration and bylaws did not provide otherwise: "the statutes and the declaration[] and the bylaws … all needed equal provisions, 1/70[] provisions." However, the court noted that the declaration provides that "the method of assessment … shall be [as] provided in the bylaws," and that the amended bylaws no longer required that units be assessed equally for 1/70 of the Association's common expenses. Therefore, the court concluded:

> [T]he [A]ssociation[ has] made a good faith effort here to comply with the court's ruling. The rates were determined by … the change in the bylaws as indicated by the declaration. A majority, 88 percent of the voters went along with it. I understand Ms. Strassburg doesn't like it, and she's probably one of the six that voted against it. But it was brought forth, and it was properly voted upon. There's no contempt here. If 88 percent of the unit owners want to pay these charges to the [A]ssociation, that's their call. And again, [WIS. STAT. §] 703.16(2) says "as otherwise provided in the declaration[]." And the declaration[] and the bylaws, this special type of common expenses are agreed to. The contempt action is denied.

¶16    Strassburg appeals, challenging the circuit court's contempt ruling. The Association cross appeals, challenging the court's 2019 and 2021 summary judgment rulings in favor of Strassburg.

## DISCUSSION

¶17    We review a circuit court's contempt decision for an erroneous exercise of discretion, and will affirm the decision "if the court reached a reasonable decision after applying the proper legal standards to the relevant facts." *Society Ins. v. Bodart*, 2012 WI App 75, ¶7, 343 Wis. 2d 418, 819 N.W.2d 298. As pertinent here, contempt of court is defined as the "intentional … [d]isobedience, resistance or obstruction of the authority, process or order of a court." WIS. STAT. § 785.01(1)(b).

¶18    Consistent with this definition, Strassburg asked the circuit court for an order "holding [the Association] in contempt of court and imposing remedial sanctions for [the Association's] disobedience, resistance, and obstruction of the [2019 and 2021 orders]." However, on appeal, Strassburg does not cite WIS. STAT. § 785.01(1)(b), which defines contempt of court; she does not provide the appropriate standard of review for a contempt decision; and she does not argue

that the Association, through its latest method of assessing its members pursuant to the amended bylaws, intentionally disobeyed, resisted, or obstructed the circuit court's earlier orders.

¶19    Instead, she argues that we should reverse the circuit court's contempt decision because the Association's latest assessment method violates the Act. But Strassburg does not develop this argument—that is, she does not explain why a determination that the Association's latest assessment method violates the Act would require a reversal of the court's contempt decision. Not only does Strassburg fail to develop this argument in the first instance, but she also fails to develop it in response to the Association's contrary arguments in its brief. The Association argues that the 2019 and 2021 orders were based on the bylaws' assessment method at that time, which provided that the unit owners would be assessed "on an equal per unit basis based on the Unit Owner's interest in the Condominium." The Association argues that because it amended the bylaws to provide for a different assessment method, its latest assessment method does not violate the court's earlier orders. Strassburg does not make a developed argument in response. For example, Strassburg does not identify any aspect of the court's earlier orders that the Association's latest assessment method violates. Strassburg thus fails to develop an argument, either initially or in response to the Association's contrary arguments, as to how a conclusion that the Association's latest assessment method violates the Act would require a reversal of the court's contempt decision, and we could reject Strassburg's arguments on that basis. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we will not consider undeveloped arguments); *United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (failure by appellant to

9

respond in reply brief to an argument made in respondent's brief may be taken as a concession).

¶20    Although Strassburg makes no argument regarding how the circuit court's 2019 and 2021 orders should be interpreted, the court appears to have agreed with the Association, and to have determined that its earlier orders were based on the bylaws' 1/70 assessment method at the time.  As noted, in denying Strassburg's contempt motion, the court explained that when it made its earlier rulings, the declaration and bylaws did not provide "otherwise" pursuant to WIS. STAT. § 703.16(2)(a); rather, "the statutes and the declarations and the bylaws … all needed equal provisions, 1/70[] provisions."  In other words, the court appears to have reasoned that its earlier decisions were based on the fact that, under the declaration and bylaws then in effect, the owners must be assessed based on their interests in Hickory Meadows' common elements, which is consistent with § 703.16(2)(a)'s default method of assessment.  The court next explained how the Association had amended its bylaws, and then determined that the Association was not in contempt.  To reverse the court's contempt decision as Strassburg asks, we would have to conclude that the court's decision, which was based on its interpretation of its prior rulings, was unreasonable.  *See Society Ins.*, 343 Wis. 2d 418, ¶7.  We discern no basis to do so, especially in the absence of any developed argument from Strassburg regarding how these prior rulings should be interpreted.

¶21    For all of these reasons, we could decline to address the arguments that Strassburg raises on appeal about whether the Association's latest assessment method complies with the Act.  However, because the Association does not argue that we should decline to address these arguments and responds to them at length in its respondent's brief, and because we conclude that the Association's latest

assessment method does not violate the Act and we would affirm in any event, we will address Strassburg's arguments.

¶22    On cross appeal, the Association challenges the circuit court's 2019 and 2021 rulings, and argues that the Association's earlier assessment methods, prior to amending its bylaws, were lawful.  However, the Association asks that we reverse the 2019 and 2021 decisions only if we do not affirm the court's denial of Strassburg's contempt motion.  Because we affirm the court's contempt decision, we do not address the Association's challenges to the 2019 and 2021 orders.

*I.  General Principles of Law Governing Condominiums*

¶23    Condominiums are creatures of statute.  ***Saddle Ridge Corp. v. Board of Rev. for Town of Pac.***, 2010 WI 47, ¶5, 325 Wis. 2d 29, 784 N.W.2d 527.  A condominium is created by filing a condominium declaration and plat with the register of deeds.  ***Id.***, ¶6; WIS. STAT. § 703.07.

¶24    A condominium is comprised of "units" and "common elements." ***Saddle Ridge***, 325 Wis. 2d 29, ¶9.  A "unit" is "a part of a condominium intended for any type of independent use, including one or more cubicles of air at one or more levels of space …."  WIS. STAT. § 703.02(15).  By contrast, the "common elements" of a condominium are "all of a condominium except its units." Sec. 703.02(2).  "Every unit owner owns an undivided percentage interest in the common elements equal to that set forth in the declaration."  WIS. STAT. § 703.13(1).  "The percentage interests shall have a permanent character," and generally "may not be changed without the written consent of all of the unit owners and their mortgagees."  Sec. 703.13(4).

¶25 "The administration of every condominium shall be governed by bylaws." WIS. STAT. § 703.10(1). A condominium's bylaws must contain the "manner of assessing against and collecting from unit owners their respective shares of the common expenses." Sec. 703.10(2)(e). "Common expenses" are defined as "the expenses of an association." WIS. STAT. § 703.02(3). "The bylaws also may contain any other provision regarding the management and operation of the condominium." Sec. 703.10(3)

¶26 An association of unit owners governs the affairs of every condominium. WIS. STAT. § 703.15(1). An association has the power to "[a]dopt budgets for revenues, expenditures and reserves and levy and collect assessments for common expenses from unit owners." Sec. 703.15(3)(a)1. "Funds for the payment of common expenses … [are] obtained by assessments against the unit owners in proportion to their percentage interests in the common elements or as otherwise provided in the declaration." WIS. STAT. § 703.16(2)(a). An association must annually adopt an annual budget that sets forth all anticipated common expenses. WIS. STAT. § 703.161(2). An association may also "[e]xercise any other power conferred by the condominium instruments or bylaws."[6] Sec. 703.15(3)(a)4.

¶27 The provisions in a condominium's bylaws are valid and enforceable as long as they do not conflict with the declaration or with state or federal law. *See Apple Valley Gardens Ass'n, Inc. v. MacHutta*, 2009 WI 28, ¶16, 316 Wis. 2d 85, 763 N.W.2d 126; *see also Kaitlin Woods Condo. Ass'n, Inc. v. North*

---

[6] "Condominium instruments" include "the declaration, plats and plans of a condominium together with any attached exhibits or schedules." WIS. STAT. § 703.02(5).

*Shore Bank, FSB*, 2013 WI App 146, ¶11 n.4, 352 Wis. 2d 1, 841 N.W.2d 562 ("We may not ignore provisions in a Declaration which do not conflict with specific statutes."). The burden is thus on Strassburg to establish that the Association's method of assessing units pursuant to the amended bylaws violates the Act. We interpret condominium documents and statutes de novo. *Apple Valley Gardens*, 316 Wis. 2d 85, ¶12.

## II. *Strassburg's Arguments*

¶28    Strassburg argues that the Association's method of assessing units pursuant to the amended bylaws violates the Act in various respects. We reject Strassburg's arguments for the reasons that follow.

### A. WISCONSIN STAT. §§ 703.15(3) and 703.16(2)

¶29    Strassburg argues that under WIS. STAT. §§ 703.15(3)(a)1. and 703.16(2)(a), the Association may only levy assessments to pay for "common expenses," and that the assessments on the Association-owned units are not common expenses for which the unit owners may be assessed. As stated, § 703.15(3)(a)1. provides that an association has the power to "levy and collect assessments for common expenses from unit owners." And § 703.16(2)(a) provides that "[f]unds for the payment of common expenses and for the creation of reserves for the payment of future common expenses shall be obtained by assessments against the unit owners in proportion to their percentage interests in the common elements or as otherwise provided in the declaration."

¶30    In response, the Association argues that the Act does not limit assessments to common expenses and that in any event, the assessments for the Association-owned units are common expenses. Because we agree with the

Association that the assessments on the Association-owned units are common expenses, we need not address whether the Association can levy assessments for purposes other than to pay for common expenses.[7]

¶31    "Common expenses," as noted, are defined broadly as "the expenses of an association." WIS. STAT. § 703.02(3). An "association" is defined as "all of a condominium's unit owners acting as a group … in accordance with the condominium's bylaws and declaration." Sec. 703.02(1m). An association is broadly empowered to "[e]xercise any … power conferred by the condominium instruments or bylaws," § 703.15(3)(a)4, which our supreme court has described as an "open-ended grant to a condominium association to construct its bylaws as it sees fit." *Ritter v. Farrow*, 2021 WI 14, ¶35, 395 Wis. 2d 787, 955 N.W.2d 122. A condominium's bylaws "may contain any … provision regarding the management and operation of the condominium." WIS. STAT. § 703.10(3).

¶32    Here, the Association, in amending its bylaws, chose to include the assessments for the Association-owned units as common expenses in its annual budget in order to achieve a balanced budget and to avoid a revenue shortfall. This is in keeping with the broad authority, explained above, that the Association has under the Act to operate and manage Hickory Meadows, and, as further set forth below, Strassburg does not persuasively argue that this conflicts with the Act.

---

[7] Although unclear, Strassburg may be suggesting that the real estate taxes on the Association-owned units are likewise not "common expenses," and that the Association's members thus may not be assessed to pay for those taxes. However, Strassburg does not develop a separate argument regarding taxes, and, therefore, we need not separately address whether the taxes on the Association-owned units are "common expenses." *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶33   Strassburg argues that the assessments on Association-owned units do not fit the statutory definition of "common expenses" for two reasons. First, she argues that they are not an "expense" but are instead "uncollected income." However, as explained above, an Association may determine what constitutes a common expense, and the amended bylaws explicitly include the assessments on the Association-owned units as common expenses. Moreover, we disagree that the assessments on the Association-owned units are not an "expense." An expense is a "financial burden or outlay." *Expense*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/expense (last visited July 9, 2024). Therefore, even if Strassburg is correct that the assessments represent uncollected income, she does not explain why uncollected income cannot be characterized as a "financial burden."[8]

¶34   Second, Strassburg argues that the assessments on the Association-owned units are not "common expenses" under WIS. STAT. § 703.02(3) because they are not expenses "of an association." *See* § 703.02(3) (defining "common expenses" as "the expenses of an association"). Specifically, Strassburg argues that the Association "does not incur responsibility for the assessments in its capacity as an association; it is obligated to pay them in its role as a unit owner." However, Strassburg does not cite any legal authority to support this distinction between the "association as owner" and the "association as association." *See Pettit*, 171 Wis. 2d at 646. Nor do we discern any: "common expenses" are "the expenses of an association," § 703.02(3), and associations may "[a]cquire, hold,

---

[8] Strassburg argues that the Act "provides provisions addressing the uncollected income when unit owners fail to pay," and cites WIS. STAT. § 703.165(2). However, Strassburg does not develop an argument as to how § 703.165(2) supports her argument that the assessments on the Association-owned units are not "common expenses." *See Pettit*, 171 Wis. 2d at 646.

encumber and convey any right, title or interest in or to real property," WIS. STAT. § 703.15(3)(b)4. We thus reject this argument.

¶35     Finally, Strassburg argues that to allow the Association to assess members pursuant to the amended bylaws "would authorize the [Association] to assess unit owners for virtually *any* amount for *any* reason." However, this argument does not account for the fact that the Association's assessment method was approved by the vast majority of its members. *See* WIS. STAT. § 703.10(5) (stating that "bylaws may be amended by the affirmative vote of unit owners having 67 percent or more of the votes").

### B. WISCONSIN STAT. § 703.13(4)

¶36     Strassburg argues that the Association's method of assessing units pursuant to the amended bylaws violates WIS. STAT. § 703.13(4), which states, "The percentage interests [in common elements] shall have a permanent character and, except as specifically provided by this chapter, may not be changed without the written consent of all of the unit owners and their mortgagees." Here, as previously noted, the declaration states that each owner has a l/70 undivided interest in Hickory Meadows' common elements. Strassburg argues that in requiring the unit owners to pay for the assessments on Association-owned units, the amended bylaws violate § 703.13(4) by altering the unit owners' ownership interest in the common elements without unanimous consent. She argues:

> The practical result of [the amended bylaws] is to treat the nine [Association]-owned units as common elements in a 61-unit condominium. The *real* expenses associated with the nine [Association]-owned units, those that [the Association] actually pays, are assessed on 61 owners, as if the [Association]-owned units were part of the common elements. But [the Association] never obtained, nor even sought, the unanimous consent of the unit owners and mortgagees necessary to reduce the number of units by nine

16

and increase the percentage interests in the common elements to 1/61.

[The Association's] practice circumvents the Condominium Act's protection of the unit owners' percentage interest. Holding [the Association's] bylaws amendments to be valid would provide a simple, backdoor method for an association to circumvent the unanimity requirement to alter the number of units and interests in the common elements. Associations could effectively reduce the number of condominium units without unanimous approval by acquiring ownership of units and passing off their assessments on the other unit owners as "common expenses."

(Footnotes omitted.)

¶37 Although unclear, Strassburg may mean to argue that the Association's latest assessment method effectively reduces the number of units at Hickory Meadows and that this is inconsistent with WIS. STAT. § 703.13(4), which Strassburg reads as requiring the consent of all unit owners to reduce the number of units in a condominium. To the extent Strassburg means to advance this argument, we reject it. First, we observe that Hickory Meadows is still comprised of 70 units, and that the Association-owned units might still be developed or sold. Second, a unit owner's percentage interest in a condominium's common elements is determined by the condominium's declaration, § 703.13(1), and that percentage interest may or may not be determined in relation to how many units there are. As a result, § 703.13(4)'s requirement of unanimous owner consent to change an owner's percentage interest in common elements is not the same as a requirement of unanimous owner consent to change the number of units. As the Association points out, the amended bylaws do not change the members' 1/70 interest in Hickory Meadows' common elements, and they thus do not violate § 703.13(4).

¶38     To the extent that Strassburg means to argue that changing how members are assessed violates WIS. STAT. § 703.13(4) because it is equivalent to changing their percentage interests in the common elements, we likewise reject that argument.  Although the Act states that the default is for members to be assessed for common expenses based on their percentage interests in the condominium's common elements, the Act specifically permits associations to assess unit owners for common expenses other than based on their percentage interests:  WIS. STAT. § 703.16(2)(a) states that "[f]unds for the payment of common expenses … shall be obtained by assessments against the unit owners in proportion to their percentage interests in the common elements *or as otherwise provided in the declaration.*"  (Emphasis added.)[9]  The Act thus permits unit owners to be assessed for common expenses using methods other than based on their percentage interests in the condominium's common elements.  Although the Act requires unanimous owner approval to change owners' interests in common elements, it does not require unanimous owner approval to change the manner in which unit owners are assessed.

¶39     Here, the declaration provides that members will be assessed pursuant to the bylaws, and the amended bylaws provide for an assessment method that is not based on owners' percentage interests.  Again, the amended

---

[9] Strassburg argues that the circuit court's reliance on the language emphasized above from WIS. STAT. § 703.16(2)(a) is misplaced because that language "does not allow the [A]ssociation to alter the *nature* of what is assessed" and "does not allow an association to assess something other than common expenses."  However, we observe that the court appears to have relied on this language only to conclude that an association's method of levying assessments to pay for common expenses need not be in proportion to the unit owners' percentage interests in the condominium's common elements.

bylaws do not change the members' 1/70 interest in Hickory Meadows' common elements, and thus do not violate WIS. STAT. § 703.13(4).

¶40 Finally, to the extent that Strassburg intends to advance other arguments, we reject them as undeveloped. *See* ***Pettit***, 171 Wis. 2d at 646.

### C. WISCONSIN STAT. § 181.0612

¶41 Strassburg argues that the Association's latest assessment method conflicts with corporate law by "making its members responsible for the corporation's debt." Specifically, Strassburg contends that the Association is a non-stock corporation and that WIS. STAT. § 181.0612 states, "A member of a corporation is not, as a member, personally liable for the acts, debts, liabilities or obligations of the corporation." Strassburg argues that "[t]his principle of limited liability is incorporated, in reverse form, in" the Act, and that the Association is "undermining [this] fundamental principle" by "making its members responsible for the corporation's debt." However, Strassburg does not cite any legal authority to support the application of § 181.0612 to an association of condominium unit owners formed under WIS. STAT. § 703.15, and for that reason we need not consider this argument. *See* ***Pettit***, 171 Wis. 2d at 646.

### D. Strassburg's Remaining Argument

¶42 Strassburg argues that the Association's amendments to its bylaws conflict with language in the declaration that protects mortgagees. In response, the Association argues that Strassburg "has forfeited this argument by failing to raise it in the circuit court." We agree that Strassburg has forfeited this argument.

¶43 "[T]he 'fundamental' forfeiture inquiry is whether a legal argument or theory was raised before the circuit court, as opposed to being raised for the

first time on appeal in a way that would 'blindside' the circuit court." ***Townsend v. Massey***, 2011 WI App 160, ¶25, 338 Wis. 2d 114, 808 N.W.2d 155 (quoting ***Schonscheck v. Paccar, Inc.***, 2003 WI App 79, ¶11, 261 Wis. 2d 769, 661 N.W.2d 476); *see also* ***Townsend***, 338 Wis. 2d 114, ¶25 ("[T]he forfeiture rule focuses on whether particular arguments have been preserved, not on whether general issues were raised before the circuit court."). Here, Strassburg raised the relevant argument in a single sentence when she moved the court to reconsider its initial decision on her first motion for partial summary judgment, which concerned one of the Association's earlier assessment methods. However, she did not raise this argument when she moved for contempt after the Association amended its bylaws.[10] As a result, we will not consider this forfeited argument on appeal because a reversal based on this argument would undoubtedly "blindside" the circuit court.[11]

## CONCLUSION

¶44 For the reasons stated, we affirm the circuit court's judgment and the order denying Strassburg's contempt motion.

---

[10] Strassburg thus raised the argument in a brief that was submitted in May 2019, more than two and one-half years before the contempt ruling that Strassburg challenges on appeal. Moreover, although Strassburg raised the argument in her motion for reconsideration, she did not raise the argument in her original motion for partial summary judgment.

[11] In response to an argument that the Association made before the circuit court, Strassburg argues that, pursuant to WIS. STAT. § 703.15(5), the members of the Association do not have an ownership interest in the Association-owned units. *See* § 703.15(5) ("No unit owner may have any right, title or interest in any property owned by the association other than as holder of a percentage interest in common elements appurtenant to its unit."). The Association, for its part, argues that the members of the Association do have an interest in the Association-owned units, but also that "it is not clear how this [argument] is relevant to Strassburg's appeal." In the absence of any explanation from Strassburg as to the significance of this issue, we decline to address it. *See* ***Pettit***, 171 Wis. 2d at 646.

¶45    No costs to either party.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.